IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CT-3130-FL

JULIO ZELAYA SORTO,               )
                                  )
            Plaintiff,            )
                                  )
      v.                          )               ORDER
                                  )
PHILLIP STOVER and                )
JOSEPH LIGHTSEY,                  )
                                  )
            Defendants.           )


This matter comes before the court on defendants' respective motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 76, 81). In this posture, the issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motions.

## STATEMENT OF THE CASE

On May 15, 2014, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 alleging that defendant Dr. Phillip Stover ("Stover") acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Plaintiff subsequently filed a motion to amend his complaint to add an Eighth Amendment claim against defendant Dr. Joseph Lightsey ("Lightsey"). On November 24, 2014, the court granted plaintiff's motion to amend and directed plaintiff to particularize his complaint by filing one amended pleading. The court cautioned plaintiff that the amended complaint would be considered his complaint in its entirety.

On December 9, 2014, plaintiff filed his amended complaint alleging that defendants Lightsey and Stover acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. On the same date, plaintiff filed a motion to appoint counsel. Then, on December 23, 2014, the court entered an order allowing plaintiff to proceed with his amended complaint, but denying his motion to appoint counsel. On January 28, 2015, the court signed a consent order governing the production of North Carolina Department of Public Safety ("DPS") documents in this case to defendant Lightsey.

On March 3, 2015, defendant Lightsey filed a motion for a protective order. Plaintiff then filed a motion to compel discovery, to which Lightsey responded. On April 22, 2015, the court denied without prejudice plaintiff's motion to compel. The court held defendant Lightsey's motion for a protective order in abeyance for a period of 30 days to allow him the opportunity to file a dispositive motion raising the affirmative defense of qualified immunity. In the interim, plaintiff filed a motion requesting that the court enter an order directing defendant Stover to respond to plaintiff's amended complaint, which the court denied as moot because Stover timely answered. On June 8, 2015, the court denied defendant Lightsey's motion for a protective order because Lightsey failed to comply with the court's April 22, 2015, instructions.

On August 6, 2015, Lightsey filed a second motion for a protective order. Defendant Stover also filed a motion for a protective order on August 18, 2015. Plaintiff then filed a motion to compel discovery, which was fully briefed. On October 15, 2015, the court denied defendants' respective motions for a protective order without prejudice. The court, however, sustained defendant Lightsey's objection to the excessive number of interrogatories propounded by plaintiff. Finally, the court denied plaintiff's motion to compel as premature in order to permit the parties the

2

opportunity to confer and attempt to resolve any discovery disputes. Plaintiff then filed a motion to appoint counsel and motion to appoint an expert, which the court denied. The court also extended its case management deadlines in response to motions filed by plaintiff and defendant Lightsey.

On November 30, 2015, plaintiff filed another motion to compel discovery, which was fully briefed. Plaintiff also filed a motion for notification of error. Defendant Stover then filed a motion for a protective order, which was fully briefed. On March 2, 2016, the court granted in part and denied in part plaintiff's motion to compel. Specifically, the court granted plaintiff's request for his 2005 and 2006 neurology reports, but denied the remainder of the motion to compel. The court also denied plaintiff's request for sanctions, plaintiff's motion for notification of error, and defendant Stover's motion for a protective order.

In the interim, defendants filed their respective motions for summary judgment arguing that plaintiff failed to establish a constitutional violation. Alternatively, both defendants raised the affirmative defense of qualified immunity. In support of their respective motions, both defendants Lightsey and Stover submitted personal affidavits supported by excerpts from plaintiff's medical records. The motions were fully briefed. Plaintiff submitted defendants' responses to discovery, excerpts from his medical records, excerpts from DPS policies, and photographs in support of his response to defendants' motions.

On March 18, 2016, plaintiff filed a motion to compel discovery. Defendant Lightsey responded to plaintiff's motion. Plaintiff filed a third motion to appoint counsel on April 25, 2016. On April 29, 2016, the court denied plaintiff's motions.

## STATEMENT OF FACTS

The undisputed facts viewed in the light most favorable to plaintiff may be summarized as follows. With this action, plaintiff, a state inmate, complains about the medical care defendants Lightsey and Stover provided while plaintiff was housed on the high security maximum control ("HCON") unit at Polk Correctional Institution ("Polk") from January 7, 2013, until he was transferred from Polk to Alexander Correctional Institution on September 10, 2015. (Lightsey Aff.¶ 4 and (DE 50), p. 2). Plaintiff's complaints against defendant Stover arise from Stover's denial of three separate UR requests for a magnetic resonance imaging ("MRI") of plaintiff's lumbar spine. (Am. Compl. ¶ IV). Plaintiff's complaints against defendant Lightsey arise from the treatment Lightsey provided plaintiff for a spinal injury, as well as a prior machete-related injury to his left arm, wrist, and hand. (Id. ¶ 5 and Am. Compl. ¶ IV).

Upon arriving at Polk on January 7, 2013, a nurse performed a health screening of plaintiff and noted, *inter alia*, that plaintiff had a prescription for Baclofen (muscle relaxant). (Lightsey Aff. ¶ 7 and Ex. 3). On the same date, plaintiff submitted a sick call request[1] complaining that he needed orthopedic boots to treat neuropathy in his leg and ankle. (Id. ¶ 8 and Ex. 4). The next day a nurse noted that plaintiff would be referred to the primary care physician, but plaintiff was not referred to defendant Lightsey at that time. (Id.)

---

[1] In the DPS, in order to obtain an appointment in the medical clinic without a regularly scheduled follow-up appointment, an inmate first must submit a sick call appointment request with his complaint, which is then reviewed by a triage nurse who reviews the complaints and schedules a time for the sick call appointment with a nurse. (Lightsey Aff. ¶ 6). At the appointment, the nurse assesses the inmate and records his complaints, as well as the nurse's observations, assessments and plan. (Id.) The nurse then determines whether the inmate should be referred to another healthcare provider, and makes such referral, if necessary. (Id.) An inmate is not scheduled for an appointment with a physician or physician assistant unless he is referred by a nurse. (Id.)

4

On January 14, 2013, plaintiff was seen by a nurse in response to a January 11, 2013, sick call request asking that his order for an extra mattress and pillow for his back pain be renewed. (Id. ¶ 9 and Ex. 5). The nurse again noted that plaintiff would be referred to the primary care physician, but plaintiff was not referred to defendant Lightsey at that time. (Id.) Plaintiff next was seen by a nurse on January 23, 2013, in response to sick-call requests for, among other things, a renewal of his Baclofen prescription. (Id. ¶ 11 and Ex. 11). In the course of the appointment, the nurse noted that plaintiff had a history of back pain and that Baclofen was last ordered for plaintiff on October 3, 2012. (Id.) The nurse referred plaintiff to the camp physician for further treatment. (Id.)

After conducting a review of plaintiff's chart on January 23, 2013, defendant Lightsey determined that there was no indication for plaintiff to receive special shoes for his leg and/or ankle because plaintiff did not exhibit symptoms of neuropathy of the feet secondary to spinal compression. (Id. ¶ 12 and Ex. 8). Lightsey, however, did prescribe plaintiff Baclofen. (Id.) Plaintiff subsequently placed a second request for therapeutic shoes, as well as an increase in his Baclofen dosage. (Id. ¶ 14 and Ex. 10). Lightsey denied both requests as medically unnecessary. (Id. ¶ 15 and Ex. 11).

After returning to Polk from a court appearance on February 5, 2013, plaintiff attended an appointment with a nurse during which he reported left shoulder pain and requested a medical notification slip directing that plaintiff not be handcuffed behind his back. (Id. ¶ 15 and Ex. 11). Plaintiff was not referred to Lightsey for these complaints. (Id.) Plaintiff then attended another sick-call-related medical appointment with a nurse on March 5, 2013, during which he reported left arm/shoulder pain as a result of having his hands handcuffed behind his back. (Id. ¶ 22 and Ex. 17).

5

In the course of the examination, the nurse observed plaintiff to be threatening and taunting the correctional officer who was present. (Id.) The nurse assessed plaintiff with attention-seeking behavior and determined that no treatment or intervention was necessary. (Id.)

On April 5, 2013, plaintiff was medically screened following a use of force incident. (Id. ¶ 25 and Ex. 15). During the screening, plaintiff complained of soreness in his lower back, bilaterally, and rated his pain as a 5 on a scale from 1 to 10. (Id.) The nurse noted that plaintiff's muscle strength, extremity assessment, neurological system review, cardiovascular system review, and respiratory system review were all normal. (Id.) Plaintiff was not referred to a physician for any additional treatment at that time. (Id.)

On April 10, 2013, a nurse examined plaintiff in response to complaints of back and leg pain. (Id. ¶ 27 and Ex. 20). The nurse observed that plaintiff was able to move his extremities well. (Id.) The nurse assessed plaintiff with pain and instructed him to take Ibuprofen. (Id.) The next day, plaintiff was screened by a nurse following a use of force incident. (Id. ¶ 28 and Ex. 20). Plaintiff complained of wrist pain and stated that a correctional officer had pulled his handcuffs, which caused bruising. (Id.) The nurse observed plaintiff's left hand was scraped, there was minimal bleeding, and plaintiff was able to move his hands. (Id.) The nurse instructed plaintiff to take Ibuprofen for his pain. (Id.) A few days later, Lightsey conducted a chart review for plaintiff and ordered the following: (1) Topomax (for his complaints of pain); and (2) Dolobid (non-steroidal anti-inflammatory drug) for pain. (Id. ¶ 30 and Ex. 22).

On April 19, 2013, defendant Lightsey examined plaintiff. (Id. ¶ 31 and Ex. 22). During the examination, plaintiff complained of left hand pain, which plaintiff attributed to a recent use of force incident. (Id.) Based upon his examination, defendant Lightsey discontinued plaintiff's Baclofen

6

medication and ordered an x-ray of his left hand to rule out any fracture. (Id.) Later the same day, a nurse saw plaintiff in response to a sick-call request complaining of left arm pain. (Id. and Ex. 23). The nurse noted that plaintiff had been treated by defendant Lightsey earlier that day and that no additional response was necessary. (Id.) On April 25, 2013, a nurse noted that plaintiff refused to attend an appointment scheduled in response to a April 23, 2013, sick-call request complaining of a painful left arm injury and asking for Baclofen. (Id. ¶ 32 and Ex. 24).

On April 26, 2013, medical staff performed an x-ray of plaintiff's hand. (Id. ¶ 33 and Ex. 25). The radiologist, Dr. Robert Cherichella ("Dr. Cherichella"), reported that there were chronic angular deformities at the joint locations of plaintiff's thumb, fourth finger and fifth finger, but that there were no signs of any acute or recent fractures, posttraumatic subluxations (dislocations), or soft tissue abnormalities. (Id.) On May 1, 2013, defendant Lightsey ordered that plaintiff resume taking Baclofen for a period of three months, after which the medication would be discontinued if there was no medical reason for its renewal. (Id. ¶ 34 and Ex. 22).

On May 2, 2013, a nurse responded to a sick-call request plaintiff made complaining of lower back pain. (Id. ¶ 35 and Ex. 26). The nurse noted that plaintiff refused to attend the sick-call appointment due to the fact that his pain was under control after he received an order for Baclofen on May 1, 2013. (Id.) Lightsey then examined plaintiff on May 10, 2013, and ordered an x-ray of plaintiff's lumbar/sacral spine to assess for a possible herniated disk.[2] (Id. ¶ 36 and Ex. 27). The results of plaintiff's spinal x-ray were negative for any abnormalities. (Id. ¶ 38 and Ex. 29).

---

[2] A UR request for the lumbar spine was submitted on May 16, 2013, but inadvertently stated that the study requested was a hand x-ray. The UR request was approved, and a lumbar spine x-ray was scheduled for May 17, 2013. (Id. Exs. 27, 29).

On July 16, 2013, a nurse examined plaintiff in response to several sick-call requests complaining of lower back pain. (Id. ¶ 49 and Exs. 38). Plaintiff also requested a renewal of his Baclofen prescription and an extra mattress. (Id.) The nurse noted that plaintiff was taking both Topomax and Baclofen for pain. (Id.) Defendant Lightsey then reviewed plaintiff's chart on July 19, 2013, and ordered that the Baclofen be discontinued based on plaintiff's limited complaints and the questionable benefit of long term use of medication. (Id. ¶ 50 and Ex. 35). Lightsey also did not find plaintiff's condition warranted an extra mattress. (Id.)

On July 23, 2013, a nurse saw plaintiff in response to a sick-call request asking for a renewal order for Baclofen and Topamax due to plaintiff's continued pain. (Id. ¶ 51 and Ex. 40). Plaintiff told the nurse that he had constant pain and tenderness in his right arm and back, which he rated a 10 out of 10. (Id.) The nurse gave plaintiff Ibuprofen and analgesic balm for his pain. (Id.) The nurse also instructed plaintiff to limit his activities to walking and sitting and to apply a warm, moist compress to his back twice daily. (Id.) On July 24, 2013, defendant Lightsey ordered the following: Zantac, Topamax, and Mobic (non-steroidal anti-inflammatory drug). (Id. ¶ 52 and Ex. 41).

A nurse then saw plaintiff on July 30, 2013, and August 1, 2013, August 7, 2013, and August 22, 2013, in response to sick call requests complaining of back and arm pain. (Id. ¶¶ 53, 55, 56, 60 and Exs. 43-47). Plaintiff refused the nurse's efforts to provide plaintiff with over-the-counter medications on August 7, 2013. (Id. ¶ 56 and Ex. 45). Lightsey subsequently submitted a UR request for Baclofen to treat plaintiff's pain, which was approved on August 13, 2013. (Id. ¶ 57 and Exs. 43, 46). Lightsey also determined that plaintiff's request for an order changing the manner in which he was handcuffed was unnecessary and that plaintiff posed a security risk due to his HCON custody status. (Id. ¶ 58).

On September 10, 2013, plaintiff made a request to nursing staff for special shoes and an order to be handcuffed in the front. (Id. ¶ 62 and Ex. 48). After examining plaintiff on September 13, 2013, Lightsey made a UR request for an MRI of plaintiff's lumbar spine on September 16, 2013. (Id. ¶ 63 and Exs. 34, 47, 49; Stover Aff. ¶ 11 and Ex. B). After reviewing the request and obtaining additional information from defendant Lightsey, defendant Stover denied the UR request on October 26, 2013, stating that there was no indication for surgical intervention. (Stover Aff. ¶ 11 and Ex. B). Lightsey did not appeal the UR decision due to the fact that he submitted the UR request for an MRI for purely diagnostic purposes and his belief that surgery was unnecessary. (Lightsey Aff. ¶¶ 63, 81).

From September 19, 2013, through November 13, 2013, plaintiff was seen by nursing staff in response to complaints of pain on several occasions. (Id. ¶¶ 68, 70, 74, 77 and Exs. 52, 53, 55, 58). Plaintiff asked, in his sick-call requests, for orders for special shoes and to be handcuffed in the front. (Id. ¶¶ 68 and Ex. 53). Plaintiff also requested Baclofen, which he already was receiving. (Id. ¶ 68 and Ex. 53). During this time period defendant Lightsey examined plaintiff and conducted chart reviews. (Id. ¶¶ 70, 78 and Exs. 52, 57). Lightsey, additionally, discontinued plaintiff's Topomax in response to plaintiff's complaints that the drug was ineffective, but prescribed Norco (hydrocodone/acetaminophen, pain reliever) and Zostrix cream (arthritis cream). (Id. ¶ 78 and Exs. 49, 57).

On January 29, 2014, defendant Lightsey examined plaintiff. (Id. ¶ 92 and Ex. 71). Plaintiff did not complain about lower back pain or request that any medications be renewed during the appointment. (Id.) Then, on February 7, 2014, Lightsey reviewed plaintiff's chart for a routine medication renewal and ordered Baclofen. (Id. ¶ 94 and Ex.72). Lightsey conducted another

9

medication renewal review of plaintiff's chart on March 21, 2014, and ordered Norco. (Id. ¶ 100 and Ex. 77). Then, on March 28, 2014, Lightsey conducted a chart review upon referral from a nurse and again determined that there was no medical indication for plaintiff to receive orthopedic shoes or an extra mattress. (Id. ¶ 102 and Ex. 77).

On April 17, 2014, a nurse examined plaintiff in response to three sick-call requests complaining, in part, of back pain. (Id. ¶ 105 and Ex. 81). At the appointment, plaintiff complained that during the week of April 8, 2014, his back was hurting more than normal and that he was now experiencing right leg pain. (Id.) Plaintiff, additionally, told the nurse that he wanted an MRI and back surgery to treat his back pain. (Id.) On April 24, 2014, plaintiff attended a second appointment with a nurse making similar complaints. (Id. ¶ 107 and Ex. 83).

Lightsey conducted a review of plaintiff's chart on April 25, 2014. (Id. ¶ 108 and Ex. 84). In light of plaintiff's complaints of radiating pain to his leg, Lightsey submitted a second UR request for an MRI of plaintiff's lumbar spine at Central Prison Hospital to rule out a possible lumbar spine stenosis or a probable recurrent herniated disc. (Id.; Stover Aff. ¶ 12 and Ex. B). Lightsey noted in his request that plaintiff was taking chronic pain medication. (Lightsey Aff. ¶ 108 and Ex. 84). On May 28, 2014, Stover denied Lightsey's second UR request stating that there was no indication for urgent surgical intervention and that Lightsey should pursue an aggressive attempt at conservative management before surgical intervention. (Stover Aff. ¶ 12 and Ex. B). Stover additionally stated that plaintiff should be treated pursuant to clinical practice guidelines pertaining to back and chronic pain. (Stover Aff. ¶ 12 and Ex. B; Lightsey Aff. ¶ 108 and Ex. 84).

On May 16, 2014, defendant Lightsey examined plaintiff in response to a referral from a nurse. (Lightsey Aff. ¶ 111 and Exs. 87, 88). Lightsey assessed plaintiff with back pain with

neuritis, and issued a medical order discontinuing plaintiff's prescription for Baclofen in response to plaintiff's report to a nurse that it only helped for 10-15 minutes. (Id.) Lightsey additionally prescribed plaintiff Flexeril (a muscle relaxant) and a Sterapred dose pack (a steroid used to reduce inflammation and pain). (Id.)

On June 5, 2014, plaintiff informed nursing staff that he had been on a hunger strike since June 2, 2014, because he felt defendant Lightsey was not providing him adequate medical care. (Id. ¶ 115 and Ex. 88). The nurse noted that plaintiff had refused his food tray, but was still drinking water and was compliant with his medications. (Id.) The nurse further noted that plaintiff's condition would be monitored and assessed. (Id.) Medical staff notified defendant Lightsey of plaintiff's hunger strike the next day and informed Lightsey that the hunger strike was in protest of the discontinuation of Baclofen. (Id. ¶ 116 and Ex. 90). Nursing staff continued to monitor plaintiff pursuant to DPS's hunger strike protocol. (Id. ¶¶ 117, 118 and Ex. 90).

On June 27, 2014, defendant Lightsey examined plaintiff in response to plaintiff's request to nursing staff for an MRI. (Id. ¶ 124 and Exs. 90, 93). During the examination, Lightsey noted that plaintiff complained of neck and lower back pains. (Id.) Defendant Lightsey ordered that plaintiff be permitted to sleep on a double mattress for a period of six months and to have a velcro lumbar spine support belt for six months. (Id.) Lightsey also prescribed plaintiff Norco. (Id.) On July 9, 2014, Lightsey ordered that plaintiff receive another 12-day course of a Sterapred dose pack to reduce inflamation and control pain. (Id. ¶ 126 and Ex. 97). Lightsey renewed plaintiff's prescription for Norco on July 18, 2014. (Id. ¶ 127 and Exs. 97).

On July 31, 2014, a nurse examined plaintiff in response to complaints that an alleged assault by a custody officer in the beginning of the month resulted in increased pain in plaintiff's arms,

head, neck, and back. (Id. ¶ 129 and Ex. 98). (Id.) Plaintiff, additionally, complained of dizziness. (Id.) In the course of a medical screening after another use of force incident on August 3, 2014, plaintiff complained of back and head pain, and defendant Lightsey ordered that plaintiff be transferred to Duke Regional Hospital for further treatment. (Id. ¶ 130 and Ex. 99).

While at Duke Regional Hospital, medical staff administered computed tomography ("CT") scans of plaintiff's brain, cervical spine, and face, as well as x-rays to his left wrist. (Id.) The left wrist x-ray showed chronic contracture deformities of several fingers, but no obvious acute fracture or deformity. (Id.) The facial CT revealed an old blowout fracture of the right orbital wall, but no new fractures. (Id.) The cervical spine CT showed mild chronic degenerative changes, but no acute cervical spine fractures or other acute spinal conditions were identified. (Id.) Finally, the brain CT revealed a right frontal scalp hematoma (collection of blood outside the skull), but no evidence of an acute intracranial (inside the skull) hemorrhage or mass effect. (Id.) Plaintiff then was discharged and returned to Polk in stable condition. (Id.)

On August 6, 2014, Lightsey examined plaintiff and reviewed plaintiff's Duke Regional Hospital visit summary. (Id. ¶ 131 and Ex. 100). Lightsey then prescribed plaintiff the use of two pillows for three months. (Id.) Later that month, defendant Lightsey prescribed plaintiff Flexeril, and Indomethacin (a non-steroidal anti-inflammatory medication). (Id. ¶ 135 and Ex. 102). On September 17, 2014, Lightsey prescribed Norco. (Id. ¶ 141 and Exs. 106).

On August 22, 2014, defendant Lightsey submitted a third UR request for plaintiff to receive an MRI of his lumbar spine. (Id. ¶ 133 and Ex. 102; Stover Aff. ¶ 13 and Ex. B). As part of his request, Lightsey noted that plaintiff had experienced multiple traumas with persistent long-term back pain which plaintiff claimed resulted in exacerbation without specific focal neurological

12

findings in the lower extremities. (Lightsey Aff. ¶ 133 and Ex. 102). Stover initially pended the request, but ultimately denied it on October 1, 2014, based on the fact that there were no specific focal neurological findings in plaintiff's lower extremity to indicate acute or serious injury. (Id.)

On September 24, 2014, defendant Lightsey submitted a UR request for plaintiff to receive a three month trial of Robaxin (a muscle relaxant). (Lightsey Aff. ¶ 143 and Exs. 110, 111). Lightsey noted on the referral form that plaintiff had a possible spinal herniation that caused lower back pain with long-standing spurring and radiculopathy to his left posterior thigh. (Id.) The UR request was denied on October 29, 2014. (Id.) Lightsey renewed plaintiff's Norco prescription on October 17, 2104. (Id. ¶ 148 and Ex. 115).

On December 5, 2014, Lightsey conducted a chart review for plaintiff and noted that no nursing assessments reflected any acute changes in plaintiff's medical condition as a cause of his pain. (Id. ¶ 160 and Ex. 125). As a result, Lightsey did not increase plaintiff's pain medication. (Id.) Two days later Lightsey conducted another chart review for plaintiff, and noted that plaintiff continued to request an increase in pain medication. (Id. ¶ 162 and Ex. 125). Lightsey additionally noted that he would further evaluate plaintiff's medication needs on December 19, 2014. (Id.)

On December 10, 2014, Lightsey reviewed plaintiff's chart. (Id. ¶ 164 n. 31 and Ex. 129). Due to plaintiff's complaint of increased back pain, Lightsey, in consultation with Dr. Abhay Agarwal ("Dr. Agarwal"), entered an order for an x-ray of plaintiff's lumbar spine with flexion views. (Id.) Lightsey also ordered a serum westergren sedimentation rate test for plaintiff's inflammatory conditions. (Id. Ex. 128). The x-ray results of plaintiff's spine showed only mild degenerative changes. (Id. Ex. 129).

Lightsey again examined plaintiff on December 19, 2014, to further assess plaintiff's analgesic needs. (Id.) Lightsey noted that plaintiff had complaints of recurrent lower back pain with radicular pain involving his right leg and foot, which plaintiff claimed had increased following an alleged assault. (Id.) Lightsey noted no signs of atrophy or muscle spasm. (Id.) Lightsey again consulted with Dr. Agarwal, who approved Lightsey's recommendation that an MRI of plaintiff's lumbar spine be obtained to rule out the possibility of a post-assault herniated disc. (Id.) Lightsey then submitted a UR request for the MRI, which was approved the same day. (Id.) The MRI was conducted on March 27, 2015. (Id.) The radiologist noted that there was minimal multilevel spondylosis of plaintiff's lumbar spine and that there was no high-grade spinal canal or neuroforaminal narrowing noted at any level. (Id.) The radiologist further noted that there was a suggestion of a small disc annular fissure at the L5-S1 level. (Id.)

On April 5, 2015, Lightsey conducted a chart review for plaintiff and noted that plaintiff was taking Norco twice daily for back pain. (Id.) Lightsey further noted that the results of the lumbar spine MRI revealed that plaintiff had three bulging discs, but no herniation. (Id.) Lightsey assessed plaintiff with degenerative disc disease of the lumbar spine in addition to minimal disc disease. (Id.) Lightsey ordered continued Norco, and physical therapy at Central Prison. (Id.)

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact.

14

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B       Analysis

Defendants raise the defense of qualified immunity in response to plaintiff's allegations that they acted with deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first considers whether plaintiff has established a constitutional violation. An Eighth Amendment claim based upon deliberate indifference to serious medical needs requires two showings, one objective and one subjective. First, an inmate must prove that "the deprivation of a basic human need was objectively sufficiently serious." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotations omitted). Second, the inmate must prove that "subjectively the officials acted with a sufficiently culpable state of mind." Id. (internal quotations omitted).

Defendants do not dispute that plaintiff is able to satisfy the objective prong of the Eighth Amendment test. Accordingly, the court's analysis focuses on the subjective prong of the Eighth Amendment test–whether Lightsey or Stover acted with deliberate indifference. Deliberate indifference "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

1.      Defendant Lightsey

Plaintiff contends that Lightsey acted with deliberate indifference to plaintiff's left arm, wrist, hand, and back pain. The record reflects that, during the relevant time period, defendant Lightsey examined plaintiff on at least 12 occasions, performed chart reviews on approximately 45 occasions, and was consulted by telephone on at least two occasions. (Lightsey Aff. ¶ 165). In response to plaintiff's complaints, Lightsey prescribed plaintiff several pain medications including Baclofen, Topamax, Dolobid, Mobic, Norco, Robaxin, Toradol, Flexeril, a Sterapred dose pack,

Indomethacin, and Zostrix cream. (Id.) In addition to medication, Lightsey ordered and reviewed several diagnostic studies including x-rays and three MRIs. (Id.) Plaintiff has produced no evidence to refute defendant Lightsey's showing that plaintiff received continuous and responsive treatment for his complaints of back, arm, wrist, and hand pain.

To the extent plaintiff asserts that defendant Lightsey's efforts in treating his pain was not effective, such allegations do not give rise to a constitutional violation. See, Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) ("Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against Lightsey is essentially a [d]isagreement[ ] between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference.") (internal quotations and citations omitted); Russell, 528 F.2d at 319; see also, Johnson, 145 F.3d at 167 (finding that negligent acts are not sufficient to establish a constitutional violation). Moreover, to the extent plaintiff disputes defendant Lightsey's decision to deny plaintiff's request for extra pillows, an extra mattress, or to be handcuffed in front,[3] such disagreements with Lightsey's medical decisions also are not actionable pursuant to § 1983. See Estelle, 429 U.S. at 97 (finding that a disagreement with a doctor's medical decisions is nothing more than a claim of medical malpractice, which is not actionable under § 1983). Likewise, plaintiff's requests for particular medications or to see orthopedic or neurological specialists, also amount to nothing more than a disagreement over the proper course of treatment, and are not actionable pursuant to § 1983. See id, at 107 ("But the question whether an X-ray or additional

_____

[3] The court notes that the defendant Lightsey attests that his decision not to enter a medical order directing that plaintiff not be handcuffed in the back was due in part to the fact that he was a security risk in light of his HCON status. (Lightsey Aff. ¶ 58).

diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

To the extent plaintiff asserts that non-party nurses or other medical staff failed to follow a physician's instruction to provide plaintiff medication or other prescribed items in response to plaintiff's sick-calls or grievances, plaintiff failed to establish a constitutional violation. Specifically, plaintiff failed to submit any evidence to establish that defendant Lightsey actually knew of the staff's alleged failure to provide plaintiff with prescribed items, much less acted with deliberate indifference to such circumstances. Farmer, 511 U.S. at 835 (finding that deliberate indifference requires that an official actually know of and disregard an objectively serious condition, medical need, or risk of harm). Defendant Lightsey, likewise, may not be held liable for any medical staff member's alleged failure to follow DPS sick call procedures because plaintiff has not presented evidence that Lightsey was aware of such violations. See id. In any event, alleged prison policy violations do not rise to the level of a constitutional violation. See Joyner v. Patterson, No.0:13-2675, 2014 WL 897121, at *4 (D.S.C. Mar. 6, 2014) ("Violations of prison policies alone do not rise to the level of a constitutional deprivation."), aff'd, 579 F. App'x 748 (4th Cir. 2015).

Based upon the foregoing, plaintiff failed to establish that defendant Lightsey acted with deliberate indifference to his medical condition. See Farmer, 511 U.S. at 833-34 (finding that deliberate indifference requires that a prison official knows of and disregards a substantial risk to an inmate's health); see, e.g., Ward v. Deboo, No. 1:11cv68, 2012 WL 2359440, at *13 (N.D.W. Va. Jan. 18, 2012), aff'd, 482 F. App'x 852 (4th Cir. 2012) ("The medical records submitted by the defendant demonstrate that the plaintiff was provided regular, continuous and appropriate medical

care under the circumstances, and that there has never been an intentional interference with a prescribed course of treatment. Accordingly, nothing the record shows that the plaintiff's knee condition was not timely or properly treated."). Thus, plaintiff failed to establish a constitutional violation, and Lightsey is entitled to qualified immunity.[4]

> 2.     Defendant Stover

Plaintiff's action against defendant Stover relates solely to Stover's denials of defendant Lightsey's UR requests for lumbar spine MRIs on October 26, 2013, May 29, 2014, and October 21, 2014. The record in this case reflects that Stover fully considered each of Lightsey's UR requests, but ultimately determined that an MRI was not warranted based upon his determination that there was no indication that surgical intervention was needed and that an MRI would be needed only in the event that surgical intervention was warranted. (Stover Aff. ¶¶ 11,12, 13, and Ex. B). Plaintiff's disagreement with Stover's medical decisions is not actionable pursuant to § 1983. See Estelle, 429 U.S. at 97. Likewise, as stated, any negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Id. at 105–106; Johnson, 145 F.3d at 168. Accordingly, plaintiff failed to satisfy the subjective prong of the Eighth Amendment test, and defendant Stover also is entitled to qualified immunity for plaintiff's Eighth Amendment claim.

> 3.     Retaliation

Claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). For an inmate to state a colorable claim of retaliation, the

---

[4] To the extent plaintiff seeks to hold defendant Lightsey liable for any alleged inadequacies in plaintiff's physical therapy at Central Prison, plaintiff failed to establish a constitutional violation because plaintiff does not allege that defendant Lightsey is responsible for his care at Central Prison. Further, plaintiff failed to establish a constitutional violation because he failed to provide any facts or evidence to support his conclusory allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (citation omitted); see, e.g., White v. White, 886 F.2d 721, 723 (4th Cir.1989) (stating minimum level of factual support required).

19

alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, in a retaliation action alleging First Amendment violations, a plaintiff must establish that the conduct complained of adversely affected his constitutional rights. <u>ACLU v. Wicomico County</u>, 999 F.2d 780, 785 (4th Cir. 1993). Additionally, a plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. <u>Adams</u>, 40 F.3d at 74–75.

Plaintiff filed this action on May 15, 2014. The record reflects that defendant Lightsey examined plaintiff the next day. (Lightsey Aff. ¶ 111 and Exs. 87, 88). Although Defendant Lightsey discontinued plaintiff's prescription for Baclofen on that date, Lightsey prescribed the alternative pain medications of Flexeril and a Sterapred dose pack. (<u>Id.</u>) The record further reflects that defendant Lightsey continued to treat plaintiff's various medical conditions after the filing of this action on May 15, 2014. Plaintiff provides no evidence to suggest that the filing of this lawsuit and plaintiff's medical care were related. Rather, plaintiff's only support for his retaliation claim is his conclusory allegation that defendant Lightsey retaliated against him for filing the instant lawsuit. Plaintiff, likewise, has provided only conclusory allegations as to any potential retaliation claim against defendant Stover. Plaintiff's conclusory allegations of retaliation are insufficient to allege a constitutional violation. <u>Adams</u>, 40 F.3d at 74. Because plaintiff failed to establish a constitutional violation, defendants are entitled to qualified immunity as to plaintiff's retaliation claim.

**CONCLUSION**

For the foregoing reasons, defendants' respective motions for summary judgment (DE 76, 81) are GRANTED.  The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 11th day of August, 2016.

LOUISE W. FLANAGAN
United States District Judge